**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**LAWRENCE MAYNARD**
   **(Lead Defendant:**
   **Antoine Jones)**

Crim. No. 05-386-10  (ESH)

Status Hearing Date:
March 23, 2007, 10:00 a.m.

**DEFENDANT MAYNARD'S REPLY TO THE GOVERNMENT'S**
**SUPPLEMENTAL OPPOSITION TO DEFENDANT'S**
**MOTION FOR MODIFICATION OF CONDITIONS OF RELEASE**

In reply to the government's opposition to defendant's request that he be released under strict conditions designed to protect the interest of the community and at the same time protect defendant's constitutional right not to be subjected to excessive bail, the defendant Lawrence Maynard, through undersigned counsel, makes the following points.

1.   At the outset we note that the government does not seriously contend that if released the defendant would pose a risk of flight.[1]  Rather, the government argues that no combination of conditions -- short of confinement at D.C. Jail --

_____

   [1]  We also note that the government does not take issue with any of the representations about defendant's personal history and background set forth in our initial memorandum at 2-7.

1

will stop defendant from trafficking in drugs.[2]  Accordingly, we do not believe it necessary to discuss the issue of flight risk in this reply.

2.    The government devotes the major part of its opposition detailing the evidence against Jones and Maynard and others,[3] asserting that the evidence against Maynard is "compelling" and "powerful" and that "dangerousness" is "inherent" in this offense -- "an international cocaine-smuggling cartel."[4]  But, even assuming that the cited evidence should not be discounted by the recent defense verdicts,[5] the government's heavy reliance on its purported "compelling" and "powerful" evidence simply fails to come to grips with the real issue in this case.  The issue is not whether the government's evidence -- assuming its truth -- demonstrates that defendant's activities during the alleged conspiracy constituted a danger to the community.[6]  Rather, the

_____

[2]  "The defendant remains a danger to the community, and as such, his motion for release should be denied."  Government Opposition at 2.

[3]  Government Opposition at 2-7.

[4]  Government Opposition at 9-10.

[5]  The government notes that the Court during the trial expressed the view that the evidence was "overwhelming."  Government Opposition at 10.  Perhaps the Court has tempered its view in light of the defense verdicts.  In any event, assuming the evidence was and is still "overwhelming" in the Court's view, the focus now should be whether there is "clear and convincing" evidence that (a) defendant is going to continue dealing in drugs and (b) whether any potential wrongdoing can be curtailed by conditions short of detention in jail.

[6]  The government suggests that because the defendant pleaded guilty at one point, the Court "should have greater confidence in its decision to detain the defendant."  Government Opposition at 2.  We disagree.  Given the prohibitions of Rule 11(e)(6) of the Federal
(continued...)

issue is whether the government has presented "clear and convincing" evidence that the defendant will start anew his prior drug trafficking and that nothing can reasonably prevent this danger except 24-hour confinement at D.C. Jail.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Cox</u>, 635 F.Supp. 1047, 1050 (D. Kan. 1986); <u>United States</u> v. <u>Fisher</u>, 618 F. Supp. 536, 537 (E.D. Pa. 1985); <u>United States</u> v. <u>Hudspeth</u>, 143 F.Supp. 32, 37 (D.C. 2001).

3.   Other than the evidence of the alleged conspiracy itself, the only other evidence that the government relies on to prove future dangerousness is the cited evidence of "Jones's repeated attempts during [October 24, 2005, to November 23, 2005] to get in contact with Maynard in a secretive fashion, both on the telephone and in writing."[7]

But, as Judge Kay himself observed, the government has produced "no evidence as to the contents of any of these letters, or whether any such letters in fact exist."  Doc. 4 at 3, Cr. No. 05-417 (ESH).  Indeed, because of this lack of evidence, Judge Kay was unable to say that Jones and Maynard were continuing to deal in drugs.  Rather, he could only speculate that "Jones <u>may</u> be attempting to use the Defendant to continue his operation."  Doc 4, at 5, Cr. No. 05-417 (ESH).  (Emphasis added.)  Moreover,

---

[6](...continued)
Rules of Criminal Procedure, the Court should not, in our view, consider in any way defendant's guilty plea which was never accepted by the Court.  Moreover, notwithstanding defendant's now-withdrawn guilty plea, defendant is still entitled to the Eighth Amendment's protection against excessive bail, as well as the Fifth Amendment's presumption of innocence.

[7]   Government Opposition at 7-8.

this Court recognized that although "highly suspicious," the government's information about the letters "<u>does not necessarily support the inference that Jones and Maynard are continuing to engage in illegal activities</u>."  Doc. 8 at 4, Cr. No. 05-417 (ESH).  (Emphasis added.)

Besides the foregoing "suspicious" information, the government has not cited in its opposition one iota of evidence tying defendant in with continued drug dealing during the month prior to his arrest, e.g., continued phone calls to any of Jones's known drug suppliers; purchases by defendant of any drugs from Jones's suppliers or from anyone else; distribution by defendant of any drugs to any of Jones's customers or to anyone else; or any information from confidential informants or cooperating witnesses suggesting that Maynard was still dealing in drugs.

Indeed, when the authorities executed the search warrant on defendant's home the day he was arrested, November 23, 2005, they did not find any drugs, drug paraphernalia, weapons, large amounts of cash, records, writings, memoranda or any other items that indicated defendant was continuing to run Jones's drug operation or that he was setting up a new drug operation.[8]

Moreover, in our view, defendant's getting a job as a truck driver in mid-November when it became obvious that he could no longer work at Levels nightclub is hardly consistent with his

---

[8]  The government makes no mention of this lack of incriminating evidence.

4

continuing to be -- as the government would have it -- a "high-level go-between in an international cocaine distribution ring."

Lastly, we believe it obvious that if released, defendant as a practical matter could not deal narcotics with Jones's prior suppliers even if he wanted to.  No experienced drug trafficker would supply drugs to a person who has been locked up for over a year and is suddenly on the street awaiting trial for fear that the reason defendant is on the street is because he is now a government "snitch" working for his 5K1.1 letter.[9]

4.    The government's opposition fails to even mention our proposed plan of release which is fashioned on the district court's release order in United States v. Vastola, 652 F.Supp. 1446 (D. N.J. 1987).  As noted in our initial memorandum, in Vastola, Judge Brotman in September 1986 initially held two defendants without bond in a drug case in which the statutory presumption of 18 U.S.C. § 3142(e) applied.  Later, when it became apparent that the defendants would not get to trial until one and a half years after their arrests, Judge Brotman, sua sponte, reconsidered his earlier detention order, and on February 6, 1987, released defendants to home arrest with strict conditions which he "designed" so as to reasonably assure "that [the defendants] have no opportunity to deal in illegal drugs and narcotics." Id.

Although we requested in our initial memorandum that

---

[9]    The government does not address this point -- which we also made in our initial memorandum.

defendant, who would be subject to electronic monitoring at all times, be allowed to leave his home to work and to attend religious services, the Court may wish to permit defendant to leave his house only (a) in the company of a family member to attend court; (b) in the company of undersigned counsel (or counsel's investigator) in connection with the preparation of his case; and (c) in the case of a medical emergency.[10]

House arrest with electronic monitoring under the foregoing limitations, coupled with the conditions (1) that defendant consent to random inspection of his home by a probation officer; that defendant consent to the use of a pen register on his telephone to be installed at the government's discretion; (3) that defendant shall avoid all contact with any alleged participant of the conspiracy charged in this case, including the co-defendants who have been acquitted, unless defendant's own counsel is physically present and while in preparation of his defense; and (4) that defendant shall not possess a firearm either in his Maryland home or elsewhere -- would surely be a reasonable accommodation of the legitimate interests of the

---

[10]    By not allowing defendant to leave home to work or to go to religious services, the Court would eliminate the possibility, however remote, that defendant would use "work" and "religious" outings to engage in illegality.  As regards not attending religious services, defendant, a Catholic, can watch Mass on TV and say his prayers at home.  If necessary, undersigned counsel will to drive to defendant's home for trial preparation sessions (and not bill the travel time on counsel's CJA vouchers).

community and the rights of the defendants.[11]

5.  We close this reply, as we closed our initial memorandum, with the words of Judge Kay: "This particular case presents a close call."[12]  Considering all of the foregoing, we respectfully suggest that the Court should revisit its earlier bond ruling and release defendant under a strict program of electronically-monitored house arrest.  By so doing, the Court will, in our view, fully comply with the congressional intent of the Bail Reform Act while at the same time recognize the legitimate constitutional rights of the defendant in this case.

Respectfully submitted,

_____/s/_____
James L. Lyons  (50690)
Kellogg, Williams & Lyons
1925 K Street, N.W., Suite 200
Washington, D.C.  20006
(202) 496-0722
(202) 331-1257  (fax)
JamesLyons@verizon.net (e-mail)

---

[11]  As noted in our initial memorandum, we believe that our proposed plan provides more safeguards to the community than the "Work Release/Halfway House" plan the Court recently imposed on co-defendant Kirk Carter, who was previously convicted of narcotics conspiracy and was sentenced to 135 months.  As an alternative to our proposed release plan, however, we ask that the Court impose the same type of plan it imposed on co-defendant Carter.

[12]  Doc. 4, at 5, Cr. No. 05-417 (ESH).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of March 2007, I caused a true and correct copy of the foregoing pleading to be delivered to the parties in this case via the Court's Electronic Case Filing (ECF).

/s/
James L. Lyons