UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAWRENCE MAYNARD<br>  (Lead Defendant:<br>   Antoine Jones) | Crim. No. 05-386-10  (ESH)<br><br>Status Hearing Date:<br>Sept. 7, 2007, 11:00 a.m. |

**DEFENDANT LAWRENCE MAYNARD'S MOTION TO ADOPT**
**PRIOR MOTIONS FILED BY CO-DEFENDANT ANTOINE JONES**

**BACKGROUND**

Defendant Lawrence Maynard was originally charged in this case with several co-defendants [88]. The Court ordered that all motions by the defendants were to be filed by July 10, 2006. But, on June 23, 2006, defendant entered a plea of guilty before Magistrate Judge John Facciola and, as a consequence, counsel for defendant did not file any motions.[1] The remaining defendants in the case, however, did file numerous motions.

Trial commenced October 27, 2006, and concluded in early January, 2007. None of the defendants that went to trial were convicted of narcotics conspiracy -- the lead count of the

---

[1] At the time defendant entered his guilty plea, he was represented by Howard B. Katzoff, Esquire.

1

indictment.[2]

On September 8, 2006, defendant filed a pro se request [187] to withdraw his guilty plea, which the Court granted February 2, 2007.[3] Thereafter, on March 21, 2007, the grand jury returned a superseding indictment charging defendant Maynard, Antoine Jones, and Kirk Carter[4] with the same conspiracy as that charged in the original indictment.[5]

At the status call on May 18, 2007, the Court set a new motion schedule and stated that as a general rule the defendants would be bound by the Court's rulings in the earlier-filed motions. The Court further stated that defendant Maynard should file a motion to adopt those motions he deemed appropriate and that he could file certain motions for which he has standing and which were not previously considered by the Court.

**MOTIONS OF CO-DEFENDANT JONES THAT DEFENDANT MAYNARD ADOPTS**

Pursuant to the Court's directive, defendant Maynard adopts the following motions that have been already filed by co-

---

[2] The jury hung on the conspiracy count as regards Antoine Jones and acquitted the other defendants of the charged conspiracy.

[3] On February 9, 2007, undersigned counsel was appointed to represent defendant.

[4] On October 27, 2006, the Court severed co-defendant Kirk Carter from the first trial because his attorney had a conflict of interest.

[5] The indictment also charges as co-defendants Francisco Javier Gonzalez-Ruan, Guadalupe Barrone, Jose Garcia, and Carols Reyna. Barrone, Garcia and Reyna have never been arrested; Gonzalez-Ruan was arrested but was inadvertently released from the D.C. Jail and is yet to be found.

defendant Antoine Jones.

    1.    Motion For A Preliminary Determination Of Conspiracy And Pretrial Ruling On The Admissibility Of Co-Conspirators' Statements [144, 154]

    2.    Motion To Disclose Identities Of Each Confidential Informant Regardless Whether They Will Be Called At Trial [144, 155]

    3.    Motion For Order Directing Government To Specify All Evidence Which May Be Subject To Suppression [144, 156]

    4.    Motion For Discovery Of Co-Defendant And Co-Conspirator Statements [144, 157]

    5.    Motion In Limine To Exclude Evidence Of ICE Investigation [212]

    6.    Defendant's Motion To Suppress Evidence Obtained From Interception Of Wire Communications And Seizure Of Electronic Communications [142]

As regards co-defendant Jones's motion to suppress the Title III wiretap evidence in this case, counsel makes the following points on behalf of defendant Maynard.

    a.    **Standing**

Defendant Maynard was specifically named as one of the targets of the Title III wiretap that was applied for on September 2, 2005, to intercept (202) 538-3946 -- the cell phone of Antoine Jones. During the course of the wiretap on Antoine Jones's cellphone, the government intercepted several calls in which defendant Maynard is alleged to be one of the speakers. Indeed, some of the calls intercepted were outgoing calls from Jones's cellphone to (301) 613-6293, subscribed to in the name of Lawrence Maynard.

Title III allows any aggrieved person to move to suppress

the contents of intercepted oral and wire communications, or evidence derived therefrom, obtained in violation of the statute. 18 U.S.C. § 2518(10)(a). An "aggrieved person" is a "person who was party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). The Supreme Court has limited standing to challenge evidence obtained under Title III to persons whose Fourth Amendment rights were violated by the surveillance. Alderman v. United States, 394 U.S. 165, 175 n.9 (1969). Thus, to bring such a challenge, one must have been a party to the illegally intercepted conversation or the owner of the premises where the illegal interception occurred. Id. See also United States v. Bellosi, 501 F.2d 833, 841-842 (D.C. Cir. 1974).

Given that defendant Maynard was a person against whom the wiretap was directed and that he was a speaker on several of the intercepted calls, he clearly qualifies as an "aggrieved person" under the statute and Alderman and thus has standing to join co-defendant Jones's motion to suppress the wiretaps and fruits thereof in this case.[6]

### b. Franks Hearing

In his motion, co-defendant Jones cites numerous instances

---

[6] Defendant Maynard also has standing to contest the government's interception of the text messages from his cellular phone (301) 613-6293. The government has advised counsel that it does not intend to introduce any of these text messages at trial. Should the government change its position, we will present a separate motion to suppress the text messages.

why Special Agent Yanta's affidavits in this case were misleading to the point that a Franks[7] hearing was warranted. This request was denied by the Court and we recognize that we are bound by the Court's ruling at this time.

For the record, however, we wish to advise the Court that defendant Maynard is currently investigating additional points that he believes may require a Franks hearing as regards Agent Yanta's affidavits. Depending on the outcome of this ongoing investigation, defendant may subsequently file a supplemental motion on the Franks issue as it relates to probable cause and to exhaustion of normal investigative techniques. Indeed, as we discuss infra, we believe there is a misleading omission of fact in Agent Yanta's affidavit as regards the necessity to employ a Title III wiretap as of September 2, 2005, which does require a Franks hearing.

    **c.**    **Exhaustion of Normal Investigative Techniques**

Counsel for defendant Jones has ably argued that the government failed to comply with Title III's exhaustion and necessity requirement (18 U.S.C. § 2518(1)(a)) -- an argument, however, that the Court did not find compelling.

For the record, we submit that Agent Yanta's affidavit as regards Title III's exhaustion and necessity requirement suffers from the same type of "boilerplate" deficiencies that led the district court judge in United States v. Rice, 3:04CR-83-R (W.D. Ky. 10/13/2005), to suppress the wiretap and its fruits in a

---

[7] Franks v. Delaware, 438 U.S. 154 (1977).

multi-defendant narcotics conspiracy case not dissimilar to this case. That decision was recently upheld by the Sixth Circuit. United States v. Rice, (Sixth Cir. No. 06-5245, decided March 2, 2007).[8]

We also note that as regards the exhaustion and necessity requirement, Agent Yanta makes no reference in her affidavit to Harold Holden, who we believe was in a position to infiltrate Antoine Jones's suspected operation.

According to a docket sheet printout obtained February 1, 2006, in the case of United States v. Holden, 1:04-cr-00339 before Judge Roberts, Harold Holden was indicted July 22, 2004, for various narcotics and weapons offenses arising from his arrest on June 26, 2004. On January 21, 2005, a status call was held and a "plea agreement hearing" was set for February 4, 2005. On August 17, 2005, Judge Roberts ordered a "Status Report" to be filed by November 14, 2005. Counsel recently attempted to get an updated docket report on Holden's case, but the docket shows: "1:04-cr-00339: SEALED v. SEALED; Case is not available to public." Accordingly, it appears that Holden entered into a cooperation agreement as part of a plea agreement. Moreover, we know that Holden was released into the community after his guilty plea (presumably to work undercover) because he worked with Jones and Maynard at Levels during the late summer and early fall of 2005.

---

[8] For the convenience of the Court, we have attached a copy of the Sixth Circuit's opinion in Rice as Attachment A.

Harold Holden was a long-time friend of Jones and was ideally situated to provide the government with the inner workings of Jones's suspected drug enterprise. He worked as the chief of security at Levels from February 2004 up to the time of the "takedown" of Jones's operation on October 24, 2005, except for the time he was incarcerated in the case before Judge Roberts. He had keys to Levels and access to the upstairs and downstairs offices. He often made payments with club money toward a variety of club expenses. In short, he had the trust of Jones as well as Maynard and was in a position to be the "eyes and ears" of the government vis-a-vis Jones.

Although we do not know for sure whether Holden was providing the government with information about Jones -- as opposed to other suspected or known drug dealers -- it is virtually inconceivable that Jones's suspected drug operation was note a critical part of Holden's cooperation. If it was, the failure of Agent Yanta to spell out the details of Holden's situation and his potential investigative use in this case is inexcusable and indicates an intentional or reckless disregard of the Agent Yanta's duty to make a full disclosure of possible investigative techniques under 18 U.S.C. § 2518(1)(a).

The reasonable inference to be drawn is that Agent Yanta failed to spell out the details about Holden for fear that the request for a wiretap might be denied. Accordingly, this deliberate failure may well require suppression. See United States v. Rice, supra.

In view of the foregoing, we ask the Court to reconsider its ruling on this motion and grant the defense a <u>Franks</u> hearing as regards Holden.  At the very least, we ask the Court to order the government to provide the Court and the defense with a statement addressing in detail why Holden was not mentioned in Agent Yanta's affidavit.[9]

### d.    The Good-Faith Exception of Leon

Although the government did not rely on the good-faith exception of <u>United States</u> v. <u>Leon</u>, 468 U.S. 897 (1984), in defending the Title III wiretap in this case, nor did the Court cite <u>Leon</u> in ruling that the Title III wiretap was not unlawful, we wish to note for the record that <u>Leon</u> is inapplicable to warrants improperly issued under Title III.  <u>See</u> <u>United States</u> v. <u>Rice</u>, <u>supra</u>.

### CONCLUSION

**WHEREFORE,** for all the foregoing reasons, we ask that this motion be granted.

Respectfully submitted,

_____/s/_____
James L. Lyons  (50690)
Kellogg, Williams & Lyons
1350 Connecticut Avenue, N.W. #600
Washington, D.C.  20036
(202) 496-0722
(202) 331-1257  (fax)
JamesLyons@verizon.net (e-mail)

---

[9] We note that Agent Yanta does discuss in her affidavit why "C-1" was not in a position to further the investigation of Jones; however, we have confirmed with the government that "C-1" is not Harold Holden, but in fact is Kevin Ray.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of July, 2007, I caused a true and correct copy of the foregoing pleading to be delivered to the parties in this case via the Court's Electronic Case Filing (ECF).

/s/<br>James L. Lyons