UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LAWRENCE MAYNARD**<br>(Lead Defendant:<br>Antoine Jones) | Crim. No. 05-386-10  (ESH)<br><br>Status Hearing Date:<br>Sept. 7, 2007, 11:00 a.m. |

**DEFENDANT LAWRENCE MAYNARD'S MOTION TO SUPPRESS EVIDENCE
OF THE 8550 MYRTLE AVENUE, BOWIE, MARYLAND, SEARCH
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendant Lawrence Maynard, through undersigned counsel and pursuant to Rules 12(b)(3)(C) and 41(h) of the Federal Rules of Criminal Procedure, respectfully moves to suppress all evidence that pertains to the execution of the search warrant on 8550 Myrtle Avenue, Bowie, Maryland, residence on February 27, 2004, and the fruits thereof.

### BACKGROUND

As the Court is aware from the first trial, on February 27, 2004, Immigration and Customs Enforcement ("ICE") Special Agent Katerina Gikas applied to United States Magistrate Judge Paul W. Grimm of the District of Maryland for a search warrant for the

premises located at 8550 Myrtle Avenue, Bowie, Maryland. In her affidavit in support of the search warrant, Agent Gikas averred that the premises were being used by a group of Mexicans and Antoine Jones to further a drug trafficking operation. Agent Gikas requested permission to delay any notice of the execution of the warrant pursuant to the so-called "sneak and peek" provisions of 18 U.S.C. § 3103a(b).

Magistrate Judge Grimm issued the warrant as requested by Agent Gikas, with the proviso that notice of execution of the warrant could be delayed for a period not to exceed 30 days, unless further delay was authorized by the court.

On the evening of February 27, 2004, ICE officers executed the Myrtle Avenue warrant. According to Agent Gikas's return of the warrant, which was filed March 5, 2004, no narcotics or U.S. currency was found in the premises; however, the officers did find certain items that were used to bundle narcotics and U.S. currency, i.e., plastic heat-sealing bags and duffle bags. Although the officers did not physically remove these items from the premises, they seized images of the items via photographs.[1]

Agent Gikas testified about these items at trial, and photographs taken during the February 27, 2004 search were introduced as evidence. In addition, this evidence formed a

---

[1] The Myrtle Avenue search warrant, Agent Gikas's application and affidavit in support of the warrant and Agent Gikas's return of the warrant are attached as Exhibit 1.

critical part of the alleged probable cause for the Title III wiretap warrant in this case.

The premises at 8550 Myrtle Avenue as of February 27, 2004, were being rented by defendant Maynard. According to the rental documents, Maynard rented the premises from November 2003, through March 1, 2004. Defendant Maynard received no notice from any law-enforcement official (or anyone else) during the period from February 27, 2004, to late December 2005 that his premises had been searched by ICE. It was not until late December 2005 or early January 2006 when he first found out about the search from his attorney during the discovery process.

### ARGUMENT

**Evidence Of The Contents Of 8550 Myrtle Avenue Must Be Suppressed Because The Evidence Was Obtained By ICE Agents With A Defective Warrant And There Was An Unjustified Failure Of The ICE Agents To Give Notice To Defendant Of The Search.**

**A.   The Search Warrant for 8550 Myrtle Avenue Was Defective under 18 U.S.C. §3103a.**

**1.   Section 213 of the PATRIOT ACT**

Section 213 of the PATRIOT Act, 18 U.S.C. 3103a -- the so-called "sneak and peek" section -- provides in pertinent part as follows:

> **(b) Delay.** -- With respect to the issuance of any warrant or court order under this section, or any other rule of law, to search for and seize any property or material that constitutes evidence of a criminal offense in violation of the laws of the Untied States, any notice required, or that may be required, to be given may be delayed if --
>
> **(1)** the court finds reasonable cause to

      believe that providing immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705,[2] except if the adverse results consist only of unduly delaying a trial);

      **(2)** the warrant prohibits the seizure of any tangible property . . . <u>except where the court finds reasonable necessity for the seizure</u>; and

      **(3)** the warrant provides for the giving of such notice within a reasonable period not to exceed 30 days after the date of its execution, or on a later date certain if the facts of the case justify a long period of delay.

    **(c) Extensions of delay.**-- Any period of delay authorized by this section may be extended by the court for good cause shown, subject to the condition that extensions should be granted upon an updated showing of the need for further delay and that such additional delay should be limited to periods of 90 days or less, unless the facts of the case justify a longer period of delay.[3]
(Emphasis added.)

Thus, Section 213 of the PATRIOT Act strictly circumscribes delayed notice. First, the issuing judge must specifically find that delayed notice is necessary because otherwise there would be adverse results as defined by § 2705 (other than delay of trial). Second, the warrant must <u>prohibit</u> the seizure of property unless the issuing judge specifically makes a finding of "necessity" for

---

[2] Section 2705 of Title 18 of the United States Code states that "an adverse result" . . . is -- (A) endangering the life or physical safety of an individual; (B) flight from prosecution; (C) destruction of or tampering with evidence; (D) intimidation of potential witnesses; or (E) otherwise seriously jeopardizing an investigation or unduly delaying a trial."

[3] <u>See</u> Title II, § 313, Oct. 26, 2001, 115 Stat. 285; Pub.L. 109-177.

the seizure.  Lastly, the issuing judge must limit the delay to no more than 30 days unless further delay is appropriate under the facts of the case.

These limitations on delayed notice were obviously designed by Congress to avoid constitutional attack.  Prior to the passage of Section 213, at least two federal circuits in upholding "sneak and peek" searches premised their conclusions on the assumption that notice was not an element of the Fourth Amendment.  See United States v. Freitas, 800 F.2d 1451 (9th Cir. 1986); United States v. Villegas, 899 F.2d 1324 (2nd Cir. 1990).  Indeed, in United States v. Pangburn, 983 F.2d 449, 453 (2nd Cir. 1993), the court starts its discussion of "sneak and peek" by stating:  "No provision specifically requiring notice of the execution of a search warrant is included in the Fourth Amendment," and the court goes on to state that "[t]he Fourth Amendment does not deal with notice of any kind. . . ."

But, the assumption of these opinions that the Fourth Amendment is not constitutionally concerned with notice is no longer valid in view of the Supreme Court's subsequent opinion in Wilson v. Arkansas, 514 U.S. 927 (1995).  In Wilson, a unanimous Supreme Court expressly held that the knock and notice requirement of the common law was incorporated into the Fourth Amendment as part of the constitutional inquiry into reasonableness.  Although Wilson establishes a rule that a search without notice is not always unreasonable, Wilson at the same time makes clear that notice is an important part of the Fourth

Amendment.

It is arguable that Section 213 does not go far enough to protect a person's constitutional right to notice. The statute only requires a judge to find "reasonable cause" to believe that an adverse result will happen if notice is not delayed. But "reasonable cause" does not even mean that the harmful result is more likely than not. For such a momentous decision, "probable cause" to believe would be a more appropriate standard. Assuming that the "reasonable cause" standard is constitutionally permissible, at the very least a reviewing court should insure that the requirements of Section 213 were scrupulously complied with before upholding a "sneak and peek" search.

### 2. Failure of the Warrant to Meet the Requirements of 18 U.S.C. § 3103a(b)(2)

As seen from Agent Gikas's affidavit, including Schedule A, which was appended to the affidavit, ICE was seeking a warrant that would allow the officers to search the premises and seize <u>inter alia</u> narcotics and U.S. currency and at the same time to delay giving notice to the lessee of the search and seizure.[4]

In accordance with 18 U.S.C. § 3103a(b)(1), the issuing judge made the required finding about the reasonableness of delaying notice of the search. In the bottom portion of the warrant, Judge Grimm stated:

> [Y]ou are further authorized pursuant to 18

---

[4] According to the affidavit, ICE knew that the premises were being rented. <u>See</u> Affidavit at 6, ¶ 10: "Investigation revealed that 8550 Myrtle Avenue is a rental property and that the owners of the house are absentee landlords.

> U.S.C. § 3103a(b)(1) of the Patriot Act not to leave any notice of entry or copy of the warrant and inventory as such notice of entry may have an adverse result on the investigation of this matter, as defined in 18 U.S.C. § 2705. . . .

And, in accordance with 18 U.S.C. § 3103(b)(3), Judge Grimm expressly ordered that the delay of notice be no longer than 30 days unless additional delay was ordered by the court.

As regards subsection (b)(2) of § 3103a, the warrant did <u>not</u> "prohibit[] the seizure of any tangible property. . . ." Indeed, as requested by Agent Gikas, in the bottom portion of the warrant Judge Grimm authorized ICE "to search" the premises at issue and "if . . . the property be found there to seize same."

However, although Judge Grimm authorized delay of notice and at the same time authorized seizure of property, the judge failed to make an express finding of "necessity" for the seizure, as required by 18 U.S.C. 3103a(b)(2). The warrant is silent on its face that Judge Grimm considered the "necessity" requirement of § 3103a(b)(2), or if he did, that he made a determination that there was a "reasonable necessity" to permit seizure of property found at the premises even though there would be no notice of the seizure to the legal occupant of the premises.

Accordingly, because the search warrant was facially defective, we submit that evidence about the contents of the premises should be suppressed.[5]

---

[5] We recognize that the Supreme Court has recently held that failure to comply with the common law knock and announce rule does not require suppression of evidence under the Fourth
(continued...)

### 2. The ICE Officers Unjustifiably Failed To Give Defendant Maynard Notice of the February 27, 2004, "Sneak and Peek" Search of His Premises.

As noted, the first time that defendant Maynard became aware of the February 27, 2004, "sneak and peek" search of 8850 Myrtle Avenue was in late December 2005 or early January 2006 when the search was disclosed by the government during the discovery process.

It is undisputed that ICE Agent Gikas knew at the time of February 27, 2004, search of Myrtle Avenue that the premises were being rented. The rental records that Agent Gikas had access to showed that the premises were rented by one Lawrence Maynard whose address was at the time 7711 Greenleaf Road, Hyattsville, Maryland 20785, where he had lived for 20 years. The lease also shows Maynard's date of birth, his social security number, and his wife's name. Moreover, the lease showed Maynard's driver's license number.

Upon information and belief, the ICE officers made no attempt at any time to serve Maynard at his 7711 Greenleaf Road address with notice of the February 27, 2004, search of his rented premises, even though they easily could have done so.

We believe that the ICE officers purposely failed to serve Maynard with notice of the search because they did not want to

---

[5](...continued)
Amendment exclusionary rule. Hudson v. Michigan, 126 S.Ct. 2159 (2006). This case, which involves a violation of the Fourth Amendment and a warrant that fails to comply with the congressional mandate of the PATRIOT Act, deals with delayed notice and not knock and announce. Accordingly, we do not believe that Hudson is necessarily controlling here.

"tip" him off about the ICE investigation, even though the officers did not have authorization from Judge Grimm to delay the notice for more than 30 days.[6]

Under these circumstances, we submit that the proper remedy for the officers' deliberate failure to fully comply with Section 213 of the PATRIOT Act is to suppress the contents of the search and its fruits from being used by the government in this case. See United States v. Gantt, 194 F.3d 987 (9th Cir. 1999).

Respectfully submitted,

_____/s/_____
James L. Lyons   (50690)
Kellogg, Williams & Lyons
1350 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036
(202) 496-0722
(202) 331-1257  (fax)
JamesLyons@verizon.net (e-mail)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of July, 2007, I caused a true and correct copy of the foregoing pleading to be delivered to the parties in this case via the Court's Electronic Case Filing (ECF).


James L. Lyons

---

[6] An evidentiary hearing may be required to determine the circumstances of why the ICE officers failed to serve Maynard with proper notice of the Myrtle Avenue search.

9