UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Cr. No. 05-386 (ESH) |
| v. | : | |
| ANTOINE JONES, also known as "Toine," and | : | |
| LAWRENCE MAYNARD | : | |
| Defendants. | : | |

**GOVERNMENT'S MEMORANDUM CONCERNING ADMISSIBILITY OF EVIDENCE OF ALLEGED ERRORS IN SEARCH WARRANT AND TITLE III AFFIDAVITS**

The United States of America, by and through its counsel, Jeffrey A. Taylor, the United States Attorney for the District of Columbia, Rachel C. Lieber and John V. Geise, Assistant United States Attorneys, in response to the Court's request for the United States' comments on the admissibility in the defense case of an attack on the accuracy of certain information in the affidavits in support of text message search warrants and the Title III intercept, including extrinsic evidence that the characterization of certain text messages was incorrect, says as follows :

**I. BACKGROUND**

Prior to the first trial in this matter the Court ruled that no preliminary showing of material misrepresentations in the affidavits in support of text message search warrants and the Title III wire intercept had been made. United States v. Jones, 451 F. Supp.2d 71, 78-79 (D.D.C. 2006). The

1

Court reaffirmed that finding in denying a new request for a <u>Franks</u> hearing prior to the trial now underway. <u>United States v. Jones</u>, 511 F. Supp.2d 74, 77-78 (D.D.C. 2007). The Court also rejected any claim of "outrageous government conduct". <u>United States v. Jones</u>, 2007 WL 3287536, *1 (D.D.C. 2007)

At the first trial the United States called Special Agent Yanta, the affiant on the affidavits in support of the text message search warrants and the Title III intercept, as a witness in the government's case in chief. She testified in some detail concerning several aspects of the investigation (Tr. 10/27 10:00 a.m. 3-41). On cross examination counsel for defendant Jones questioned Special Agent Yanta at length concerning the accuracy of the affidavits in support of search warrants for text messages, including her observations about people coming in and out of the building in which Levels was located, their possible employment or not at the club, the business hours of the restaurant located in the structure, the number of pen register activations between various individuals and Jones/Maynard, why these activations were or were not suspicious, and what information various informants had supplied (id. at 41-75).

The Court at that point indicated that it was concerned that "ultimately you are going to buy a ruling from me to tell the jury that I've already ruled on this issue. You are making it sound like she is misleading the Magistrate Judge." (id. at 76). The Court went on to observe that "I've already ruled it is not material. If it is immaterial legally, why should you be able to cross examine?" (id. at 78). The defendant contended that the relevance was a challenge to Special Agent Yanta's credibility (id.). The Court in response added that "to suggest in a way that she either mislead [Magistrate Judge] Kay or anybody else I think is legally improper" (id. at 79). The Court warned that an attack on why the witness considered particular evidence "suspicious" or not would "open

2

up all the other things she was told. I didn't think it was relevant because I knew this. I knew that and I knew that" (id. at 84). The Court added that no objection had been raised to this line of cross and so the door would be open for both sides to be in a great deal of information that would otherwise be excluded (id. at 85-86).

The next trial day the defense indicated it intended to continue with inquires about specific text messages that were discussed in the Title III affidavit. The Court was concerned that this would open up "all this hearsay which wouldn't otherwise come in" (Tr. 10/30 9:30 a.m. 6). The defense argued that Special Agent Yanta's credibility was at issue and thus subject to this kind of challenge (id.). The Court noted that the defense was "attacking someone's credibility whose credibility is barely at issue, barely" (id. at 7). After hearing the cross examination about the meaning of the text messages the Court described itself as "terribly distressed by this approach.... the problem is we're on a complete tangent. I wish to keep the jury focused." (id. at 73). The Court characterized the result of all this examination as a "terrible Donnybrook" (id. at 74) that "opened up the kitchen sink" (Tr. 10/30 1:15 p.m. at 16).

Approximately a month later the defense sought in its case to call several witnesses who were participants in the text messages discussed in the cross examination of Special Agent Yanta. The Court, in allowing the testimony, observed that "rightly or wrongly this line of questioning was allowed [the cross examination of Special Agent Yanta concerning the text messages], I am sticking by my ruling. These people can testify briefly about whether these calls had to do with drugs or legitimate business of Levels.... Probably they [the calls] would seem suspicious to anybody that didn't work at the club. But I think arguably it's bias and I am erring on the side of permitting it" ( Tr. 11/30, 10:15 a.m. at 40-41).

## II. EVIDENCE CONCERNING POSSIBLE ERRORS IN THE TEXT MESSAGING AND TITLE III AFFIDAVITS ARE NOT ADMISSIBLE IN THIS TRIAL

The Court has asked the government to comment on the defense's intention to call Special Agent Yanta in its case, apparently to essentially repeat the same line of examination concerning possible errors in the affidavits in support of the text message search warrants and the Title III intercept. It is the government's understanding that as part of that proof the defense intends to once again call the witnesses who testified in the prior trial that specific text messages discussed in the Title III affidavit were not drug related. Since the government has not seen the defense pleading in support of the admissibility of this evidence it is somewhat difficult to respond precisely to whatever arguments have been raised, but there seems no plausible justification for the admission of this evidence in the posture of the present proceeding.

    A. <u>Pursuant to Federal Rule of Evidence 402 the proffered evidence is not relevant to any issue before the jury</u>

Obviously, '[e]vidence that is not relevant is not admissible". Federal Rule of Evidence 402. Since Special Agent Yanta is not a government witness in this case, any issue as to her credibility or bias is simply not before this jury.[1] There are, of course, at least in theory, attacks on a prosecution that can be made based on the government's motivations, but these are not issues for

---

[1] It is true that any party may impeach a witness. Federal Rule of Evidence 607. However, a party may not call a witness chiefly for the purpose of using "impeachment" as a subterfuge to introduce evidence that otherwise would not be admissible. <u>United States v. Johnson</u>, 802 F.2d 1459, 1466 (D.C. Cir. 1986) (impermissible to call a witness for the purpose of impeachment in order to get otherwise inadmissible statement into evidence); <u>United States v. Libby</u>, 475 F. Supp. 73, 83-84 (D.D.C. 2007) (rejecting defense attempt to call witness chiefly to impeach her with a prior inconsistent statement).

a jury.[2]

For example any claim of selective prosecution "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecution has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). Accord, United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) ("issue of selective prosecution is one to be determined by the court"); United States v. Regan, 103 F.3d 1072, 1083 ("selective prosecution defense is an issue for the court rather than the jury"). Similarly, if the defense is contending that there is some proof of outrageous government conduct here, that, again, would be a question for the court, not the jury. Washington, supra, 705 F.2d at 495; Regan, supra, 103 F.3d at 1082.

B. Balancing under Rule 403 strongly weighs against the admission of this evidence

Even where evidence is relevant it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...". Federal Rule of Evidence 403. The Court is in the unusual position of having seen how this particular evidence plays out before a jury; it was " a complete tangent", a "terrible Donnybrook" that "opened up the kitchen sink". The Court was "terribly distressed by this approach". And, even when Special Agent Yanta was a witness in the government's case in chief, the Court viewed her credibility as "barely at issue". Given all of that, it is difficult to understand how whatever now even more gossamer relevance this evidence might have since Special Agent Yanta is *not* going to be a

---

[2]The Court has in effect already rejected such claims on the merits in denying both the request for a Franks hearing on the Title III affidavit and the motion to dismiss the indictment based on outrageous government conduct.

government witness at this trial could justify its admissibility under Rule 403 in light of the confusion it engendered in the last trial.

## CONCLUSION

For the reasons discussed, the evidence concerning possible errors in the affidavits in support of the text messaging search warrants and the Title III intercept should not be admitted.

Respectfully submitted,

Jeffrey A. Taylor,
United States Attorney

By:_____
John V. Geise
Assistant United States Attorney
D.C. Bar No. 358267
555 4th Street, NW, Room 8445
Washington, DC 20530
(202) 514-7121
John.geise@usdoj.gov