**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Criminal Nos.  05-386 (ESH)** |
| | : | |
| **ANTOINE JONES, and** | : | |
| **LAWRENCE MAYNARD** | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES MEMORANDUM IN OPPOSITION TO GIVING OF MULTIPLE**
**CONSPIRACY INSTRUCTION**

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, respectfully request that the Court decline to give a "multiple conspiracy"

instruction in this case.  In support of that request the United States says as follows:

Two basic principles of law, in conjunction with the evidence presented in this case,

demonstrate that a multiple conspiracy instruction is inappropriate here.  First, a trial court should

decline to give such an instruction when the evidence does not support it.  Second, simply because

the players in a conspiracy may change over time does not mean separate conspiracies exist.  This

is especially true in drug distribution organizations, particularly when the defendants on trial are at

the intersection point of various aspects of the drug distribution activity.  Finally, the evidence here,

essentially that Jones' suppliers had two higher level sources at one point and that Jones had

numerous customers,  provides no basis to conclude that defendants Jones and Maynard were

involved in multiple separate drug conspiracies.

Where the evidence does not justify a finding of  multiple conspiracies a trial court

1

appropriately refrains from giving such an instruction.  United States v. Graham, 83 F.3d 1466, 1472 (D.C. Cir. 1996) (trial court properly refused to give multiple conspiracy instruction where evidence showed that the defendants on trial worked together in the narcotics organization); United States v. Briscoe, 896 F.2d 1476, 1514 (7th Cir. 1990) (defendants not entitled to multiple conspiracy instruction when evidence showed one core organization, albeit with changing members over time); United States v. Towers, 775 F.2d 184, 190 (7th Cir. 1985) (where evidence does not justify a finding of multiple conspiracies district court properly rejected proffered instruction); United States v. McLeron, 746 F.2d 1098 (6th Cir. 1984) (multiple conspiracy instruction not supported by evidence that members entered or exited the conspiracy at different points); United States v. Khaalis, 408 A.2d 313, 342 (D.C. 1979) (trial court properly refrained from giving multiple conspiracy instruction).

In drug conspiracies the mere fact of changing membership, or mutating roles for coconspirators, does not defeat the existence of a single conspiracy.  Thus,  in United States v. Tarantino, 846 F.2d 1384 (D.C. Cir. 1988) there was an intricate and changing hierarchy of participants, including several sources for the drugs involved. Id. at 1393-94.  The court held that there was nonetheless a single "chain-conspiracy". Id.[1]   The factors of significance in reaching this conclusion were; an overlap of participants in the various operations claimed to comprise a single conspiracy, strong evidence that a single player coordinated the enterprise, and, most important,

---

[1]Under the chain-conspiracy analysis the "government need not prove a direct connection between all the conspirators.  A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for the other participants, even if he is ignorant of their precise identities.  When the conspirators form a chain, each is likely to know that other conspirators are required."  United States v. Haire, 371 F.3d 833, 837 (D.C. Cir.2004) (quoting Tarantino, supra, 846 F.2d at 1392).

"whether the conspirators share a common goal, such as the possession and distribution of narcotics for profit". Id. at 1393. So, too, the fact that the organization may be involved with several different drugs does not mean that multiple conspiracies are present. United States v. Dickey, 736 F.2d 571, 582 (10th Cir. 1984) (single conspiracy to distribute cocaine and marijuana); United States v. Moten, 564 F.2d 620, 625-26 (2d. Cir. 1977) (single conspiracy to distribute both heroin and cocaine); United States v. Eiland, 2007 WL 4172069, *3-4 (D.D.C. 2007) (single conspiracy involving cocaine and heroin). Nor does the existence of differing sources of drugs over the life of the conspiracy mean that multiple conspiracies are present. Briscoe, supra, 896 F.2d at 1506, 1514 (multiple conspiracy instruction properly refused despite the existence of various supplier of heroin to the drug organization);.

For example, Graham, supra, involved different groups or "cliques" which sometimes competed with each other, but with all of them distributing drugs from a common local source. Id. at 423. The court concluded that on this evidence a multiple conspiracy instruction was properly refused. Id. at 1472. Indeed, the court went further, concluding that even if the evidence showed that the various "cliques" involved were separate conspiracies, that would not have justified a multiple conspiracy instruction since the defendants on trial were all part of the same "clique". Id.

The evidence in this case to date shows that defendant Jones was at the center of all the charged charged conspiracy. He was both the primary recipient of the drugs supplied over time, essentially the same organization, and the distributor of the cocaine in the Washington, D.C. area. Maynard, albeit a lesser player, directly assisted Jones both in obtaining the cocaine from Texas/Mexican sources and the distribution of drugs. The testimony of Roel Bermea outlines direct purchases by Jones of most of the drugs which Bermea assisted in bringing to both this area and

Atlanta, with Maynard making two pick ups of drugs for Jones. The "ICE" investigation provides support for the involvement of Maynard with the source of cocaine, evidence that he helped lease a location where the suppliers stayed. Similarly, both Donald Hunter and Demetrius Johnson testified to Maynard directly assisting Jones in the distribution side of the conspiracy.

While Bemea does describe some dealing by "Pelos" behind "Primo's" back, that is no different than the occasional competition between the various distribution groups in <u>Graham</u>. So, too, while Johnson and Hunter may not have been aware of the other members of the organization that does not defeat the existence of a single chain conspiracy. And, even if there could be some argument that somehow there might be different conspiracies stemming from the shift at one point in the drug supplier above Primo and Pelos, or with various customers, that would not alter the fact that, as in <u>Graham</u>, Jones and Maynard are part of the same conspiracy, at the center of the activity charged in Count I of the indictment.

Respectfully submitted,


JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


_____

JOHN V. GEISE
Assistant United States Attorney


_____

RACHEL CARLSON LIEBER
Assistant United States Attorney