UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. CR-05-0386 (ESH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE MAYNARD | : | |
| | : | |
| Defendant. | : | Sentencing Date: April 24, 2008 |

GOVERNMENT'S REPLY TO DEFENDANT MAYNARD'S
SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully files this memorandum in response to defendant Lawrence Maynard's

sentencing memorandum.  The government intents to briefly address four points.  First, what the

statutory mandate, the guidelines, and the  unanimous case law in the circuits, including this

circuit, says concerning the use of acquitted conduct in determining a sentence.  Second,  whether

a district court can choose to ignore the clear thrust of binding precedent because the district

court disagrees with the reasoning of the court of appeals.  Third, the quantity of cocaine that

should be attributed to Maynard using the preponderance standard dictated by a fair reading of

the case law.  Finally, the appropriate sentence based on the factors outline in 18 U.S.C. § 3553.

-2-

### A. **Acquitted Conduct Unquestionably May and Should Be Considered by a Sentencing Court**

1. The Congressional Mandate Directs the Consideration of All Relevant Conduct for Sentencing, Including Acquitted Conduct

18 U.S.C. § 3661 states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." And the "Supreme Court has interpreted the language of section 3661 to authorize the [sentencing] court's consideration of acquitted conduct in sentencing." United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir.), cert. denied, 127 S. Ct. 691 (2006).

2. Guideline Sentencing Principles Approve the Use of Acquitted Conduct

Pursuant to sentencing guideline § 1B1.3 (a) (1)(A) a defendant is responsible for guideline purposes for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant". In jointly undertaken criminal activity, including a conspiracy, this responsibility extends to "all reasonably foreseeable acts and admissions of others in furtherance of the jointly undertaken criminal activity" Guideline § 1B1.3(a)(1)(B). Assuming, of course, that the activity involved "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" Guideline § 1B1.3(a).

On its face this would seem to include the consideration of acquitted conduct in determining both the appropriate guideline range and the appropriate sentence within that range. Not surprisingly, the court of appeals for this circuit has adopted that plain reading, holding that "§ 1B1.3 is certainly broad enough to include acts underlying offenses of which the defendant

has been acquitted. Not only may the sentencing court consider acquitted conduct in calculating

the appropriate Guideline range but it may also consider the conduct in determining the sentence

within the range." Dorcely, 454 F.3d at 375-76 (quotation marks and citation omitted).

> 3. Unanimous Circuit Authority, Including Binding Precedent in This Circuit,
> Approves the Use of Acquitted Conduct for Sentencing Purposes

In determining the full scope of the activity chargeable to a defendant under the

guidelines "a sentencing court may base a sentence on acquitted conduct without offending the

defendant's Sixth Amendment right to trial by jury." Dorcely, 454 F.3d 366 at 371. Similarly,

considering acquitted conduct for sentencing purposes does not offended the due process clause

of the Fifth Amendment. Id. at 372 ( "a sentencing court may consider a defendant's past

criminal behavior, even if no conviction resulted from that behavior, without violating due

process") (internal quotations and citation omitted). And the acquitted conduct need only be

found to a preponderance standard. Id. at 372-73.

Every circuit that has considered the issue has concluded that acquitted conduct may be

used for sentencing purposes. See United States v. Mercado, 474 F.3d 654, 657-58 (9th Cir.

2007) (no constitutional violation when sentencing judges consider conduct underlying acquitted

counts), cert. denied, 2008 WL 833347 (2008); United States v. Gobbi, 471 F.3d 302, 314-15

(1st Cir. 2006) (acquitted conduct may be used for sentencing); United States v. Farias, 469 F.3d

393, 399-400 (5th Cir. 2006) (same), cert. denied, 127 S. Ct 1502 (2207); United States v.

Hayward, 177 Fed.Appx. 214, 215 (3d Cir.) (same), cert. denied, 127 S.Ct. 270 (2006); United

States v. High Elk, 442 F.3d 622, 626 (8th Cir. 2006) (even after Booker acquitted conduct can

be considered); United States v. Vaughn, 430 F.3d 518, 525-27 (2d Cir. 2005) (same), cert.

denied, 574 U.S. 1060 (2006); United States v. Price, 418 F.3d 771, 787-88 (7th Cir. 2005)

(same), cert. denied, 128 S. Ct. 669 (2007); United States v. Ashworth, 139 Fed.Appx. 525, 527

(4th Cir.) (per curiam) (Sixth Amendment not violated by considering acquitted conduct for

sentencing purposes), cert. denied, 546 U.S. 1045 (2005); United States v. Magallanez, 408 F.3d

672, 684-85 (10th Cir.) (same), cert. denied, 546 U.S. 955 (2005); United States v. Duncan, 400

F.3d 1297, 1304-05 (11th Cir.) (same), cert. denied, 546 U.S. 940 (2005).

 In the face of such clear authority on this point little more should have to be said.

However, some brief observation is appropriate on Maynard's assertion that there is a

"likelihood that a majority of the Supreme Court today would rule that the Sixth Amendment

prohibits use of acquitted conduct for purposes of sentencing under the federal guidelines"

(Maynard Sentencing Memo at 10).

 First, in United States v. Watts, 519 U.S. 148, 157 (1997) the high court held that "a

jury's verdict of acquittal does not prevent the sentencing court from considering conduct

underlying the acquitted charge, so long as that conduct has been proved by a preponderance of

the evidence." Even if one would were to engage in the highly speculative activity of predictive

Justice counting as Maynard does (see Maynard Memo at 9) and do so with the gift of prophecy,–

which Maynard probably lacks – and be able to accurately predict that the Supreme Court was

going to overrule Watts "it [still] remains the [Supreme] Court's prerogative alone to overrule

one of its precedents. That is so even where subsequent decisions or factual developments may

appear to have significantly undermined the rationale for [the Court's] earlier holding." Roper v.

Simmons, 543 U.S. 551, 594 (2005) (internal citations and quotation omitted). Thus, this court

is obliged to act assuming the continued vitality of decisions of the Supreme Court until the high court speaks differently.

Second, the possibility Maynard envisions, that the Supreme Court might overrule <u>Watts</u> seems not to have troubled the appellate courts, particularly the court of appeals for this circuit, that have considered the issue. <u>Dorcely,</u> and the unanimous authority cited above, all approving the use of acquitted conduct for sentencing purposes were decided subsequent to <u>United States v. Booker</u>, 543 U.S. 220 (2005). Appellant does reference the post-<u>Booker</u> opinions in <u>Gall v. United States</u>, 128 S.Ct 586 (2007) and <u>Kimbrough v. United States</u>, 128 S.Ct 558 (2007) (Maynard Memo at 8-9) but these decisions do not in any way address the use of acquitted conduct. And, neither the court of appeals for this circuit, nor any other court of appeals, writing after <u>Gall</u> and <u>Kimbrough,</u> seems to have questioned the use of acquitted conduct for sentencing purposes. <u>United States v. Brown</u>, 2008 WL 540236, *2 (D.C. Cir. 2008) (upholding use of acquitted conduct for sentencing purposes); <u>United States v. Gonzalez</u>, 2008 WL 925379, * 2-3 (2d Cir. 2008) (same) (summary opinion); <u>United States v. Brooks</u>, 2008 WL 754775, *7-8 (11th Cir. 2008) (same); <u>United States v. Ibanga</u>, 2008 WL 895660, *3 (4th Cir. 2008) (reversing district court's categorical refusal to consider acquitted conduct for sentencing purposes).

B. **A District Court May Not Categorically Reject the Use of Acquitted Conduct**

18 U.S.C. § 3661 states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (Emphais added). Given that the language of § 3661 applies to acquitted conduct,

Dorcely, 454 F.3d at 375, the statute alone would seem to preclude a sentencing court

categorically refusing to consider a particular kind of evidence that is otherwise admissible.

So, too, both 18 U.S.C. § 3553 (a)(6) and the Sentencing Commission's interpretation of

its statutory mandate demonstrate that "Congress sought uniformity in sentencing by narrowing

the wide disparity in sentences imposed by different federal courts for similar criminal conduct

by similar offenders." Sentencing Guidelines, Chpt 1. Introduction and Application Principles,

Part A. 3 (Emphasis in the original). Obviously, significant disparity will be introduced if

sentencing judges begin to pick and choose the information they will consider based on whether

they approve or disapprove of the court of appeal's decision as to the admissibility of particular

kinds of evidence.

Maynard cites the opinions in United States v. Safavian, 461 F. Supp.2d 76 (D.D.C.

2006) and United States v. Pimental, 367 F. Supp. 2d 143 (D. Mass. 2005) for the proposition

that a District Court may choose, as a matter of its discretion, to refuse to consider particular

kinds of conduct for sentencing purposes. And, indeed, the Safavian court did "decline[] to

exercise its discretion under the advisory Guidelines to consider such conduct, because it has

long believed that consideration of acquitted conduct trivializes 'legal guilt' or 'legal innocence'

which is what a jury decides." 461 F. Supp. 2d at 83 (citing Pimental, 367 F. Supp. 2d at 152).

The United States does not dispute that in an advisory guidelines regime a sentencing court may,

in some circumstances, after computing a guideline sentence, choose to disagree with a general

policy choice made by the Sentencing Commission and impose a sentence outside the range in

part on the basis of that disagreement. Kimbrough v. United States, 128 S. Ct. at 564 (upholding

district court consideration of inequitable nature of 100-1 crack powder ratio in sentencing

outside applicable guideline).

But what is happening in <u>Safavian</u> is quite different.  The <u>Safavian</u> court, disagreeing

with the reasoning of <u>Dorcely</u> that acquitted conduct may appropriately be considered for

sentencing purposes,  has chosen sub silentio to overrule the court of appeals.  It would seem to

be a classic abuse of discretion for a trial court to determine that it will never consider or even

admit  a  particular kind of information, not because the trial court doubts the probative value of

that evidence,  but because the trial judge would have resolved the admissibility of that general

class of information differently if the trial judge had drafted the rules of evidence or been on the

court of appeals.

This question was squarely presented by the district court opinion in <u>United States v.</u>

<u>Ibanga</u>, 454 F. Supp.2d 532 (E.D. Va. 2006) where the trial court, in a lengthy opinion, relying in

part on <u>Pimental</u>, refused to consider acquitted conduct in imposing a sentence.  The Court of

Appeals for the Fourth Circuit reversed,  concluding that the trial court "committed significant

procedural error by categorically excluding acquitted conduct from the information that it could

consider in the sentencing process." <u>United States v. Ibanga</u>, 2008 WL 895660 at * 3 (quotations

and citation omitted).  <u>See</u> <u>United States v. Tello-Nicio</u>, 242 Fed. Appx 892, 894 (4th Cir. 2007)

("acquitted conduct challenged by [the defendant] and considered by the [trial] court was

supported by substantial evidence.  To ignore such evidence would neither promote respect for

the law nor provide just punishment,  as required by § 3553");  <u>United States v. Maggallanez</u>,

408 F.3d at 685 (Rejecting <u>Pimental</u>; district court appropriately considered larger quantity of

drugs for sentencing purposes despite jury special verdict finding lesser amount given that post-

Booker 'in sentencing criminal defendants for federal crimes, district courts are still required to consider Guideline ranges which are determined through application of the preponderance standard, just as they were before").

Maynard also proposes what is, in effect, a categorical rejection of the use of acquitted conduct at sentencing through the mechanism of the court's concern for the "public's perspective" under 18 U.S.C. § 3553 (a). (Maynard Memo at 27-28).  This argument is without merit for at least two reasons.  First, the mechanism for determining the "public's perspective" in our system of government is generally the people's elected representatives. 18 U.S.C. § 3661, enacted by those elected representatives, mandates that no limitation shall be put on the information to be received and considered at sentencing and the interpretation of that provision, binding on this court, is that it includes the use of acquitted conduct. Dorcely, 454 F.3d at 375.

 Second, ascertaining the "public's perspective" is not always the easiest task.  One could, for instance, pose the following question in an opinion poll:

> Traditionally, courts in the United States have been allowed to consider a wide range of factors in deciding what sentence to give a defendant who has been convicted of a crime.  For many years that has included information concerning conduct for which a defendant may have been acquitted.  To use that information in determining a fair sentence  the court must decide that other behavior is proven, but just not to the beyond a reasonable doubt standard used by a jury.  The reason for this rule is so that a criminal can be punished for the full range of the harm he or she has caused.  The kinds of offenders who may receive higher sentences because of this rule include drug dealers and child pornographers. Do you think the courts should continue to follow this rule,  or should it be changed so drug dealers and child pornographers receive lighter sentences,  despite the fact that a court may find it more likely than not that they have dealt drugs or exploited children beyond the specific offenses for which they have been convicted by a jury?

In all likelihood the results of the poll would favor the continued use of acquitted conduct, proven to a preponderance standard, in sentencing.  While hardly the most neutrally phrased of questions, it does illustrate the incongruity  in a district court deciding to ignore the mandate of congress, the expressed views of the sentencing commission, and the unanimous opinions of the appellate courts based on the district court's perception of the "public's perspective".   Indeed, it seems fairer to say that in  fashioning a sentence  "[t]o ignore [acquitted conduct supported by substantial evidence] would neither promote respect for the law nor provide just punishment,  as required by § 3553." Tello-Nicio, 242 Fed. Appx. at 894.

C. **Maynard is Responsible for at Least 15 Kilograms of Cocaine Under the Guidelines**

In its initial sentencing motion the government extensively discussed the evidence supporting a finding that Maynard should be held responsible for in excess of 15 kilograms of cocaine under the Sentencing Guidelines (Government Sentencing memorandum at 5-11) and has no intention of repeating that discussion.  That are, however,  three brief points the government wishes make in response to Maynard's memo.

 First, Maynard's memo at 23 n.26 indicates that there was no reference by Special Agent Gikas to Maynard ever being observed going in or out of the Myrtle Avenue house he had rented. Special Agent Gikas testified in the first trial of this case that she observed a white Isuzu box truck driven by Maynard at the Myrtle Avenue address (11/15/06 pm. Tr. 130).  It may well be that no surveillance agent testified to actually seeing Maynard enter or leave the residence.

Second, Maynard asks the Court to disregard the testimony of Roel Bermea concerning Maynard's two trips to the Atlanta stash house even under a preponderance standard. Doing so, however, would require the Court to reject the significant corroboration for this testimony outlined

in the government's initial memo.  The only justification Maynard cites for disregarding this

evidence is that the jury apparently did so in making its judgement (Maynard Memo at 24) .  But that

begs the question of whether Bermea's testimony, in conjunction with the other evidence, is proof

of the trips to a preponderance standard.

Finally, in computing the quantity of cocaine attributable to Maynard the Court should look

at the evidence as a whole.  For instance, Maynard argues that he should not be held responsible for

a bag Demetrius Johnson handed him containing 2 kilograms of cocaine because the cocaine was

concealed and Johnson never told Maynard what was contained in the bag.  That argument might

have some force if it was the sole evidence in the case against Maynard, but the evidence showed

that Maynard assisted Jones in the drug distribution operation in a number of ways, making it

improbable that he was unaware of what was going on with Johnson's drug purchase.

Similarly, Bermea's testimony that Maynard made two pickups of cocaine in Atlanta has to

be evaluated not only in light of the specific evidence of those trips[1] but the other testimony as well.

Thus,  Officer Whithead's seizure in North Carolina of in excess of  $60,000 in cash from a hidden

compartment in   Jones' van, driven by Maynard heading south is strong support for Bermea.

Similarly, the ICE investigation, showing, as it does, that in 2004 Jones trusted Maynard to be

---

[1]    Testimony and documents showing that Maynard had been stopped for speeding in North Carolina on March 13, 2005 and paid the ticket (Exhibits Misc. 22 and 23).  Hotel records showed that Maynard had stayed several times at hotels near the stash location during the period Bermea had testified Jones and Maynard were getting cocaine in Atlanta (Exhibits 21 and 22).  An analysis of pen registers on Jones and Maynard's phones at that time, in conjunction with information obtained from cell phones seized at the Ft. Washington stash house, showed contacts during this period by both Jones and Maynard with phones linked to the supply organization (Exhibits KOB 3, 4, 13).   And Donald Hunter testified that at one point when he was trying to purchase more cocaine from Jones,  Jones said that he was waiting for Maynard to come back (Hunter testimony 12/4/07 pm at 32-36).

involved with his sources of supply, lend weight to Bermea's testimony about Maynard's connection with Jones' cocaine source in early 2005.

As set forth in the government initial memo, a fair evaluation of this evidence, at the preponderance standard, leaves no question that Maynard was personally involved with in excess of 15 kilograms of cocaine.

### D. **<u>The Guideline Range is Appropriate</u>**

There is, of course, no magic system to find an appropriate sentence. However, the government would like to make a few observations on the factors that Maynard points to as grounds for the court to impose a sentence below the guideline range.

First, any number of defendants discover religion while incarcerated. Without discounting the possibility of a genuine conversion experience, the court should view such claims with some skepticism.

Two, with exception of Maynard's own statement to the probation department, there is no evidence that his involvement with this conspiracy was motivated by a need to satisfy any personal addiction issues. Nor would that be credible given the length of Maynard's involvement and the various roles he played.

Three, there is nothing so extraordinary in Maynard's background as to justify a significant sentencing departure.

## Conclusion

WHEREFORE, the government requests that the Court adopt the PSR, except for a finding under paragraph 55 that the quantity of cocaine attributable to Maynard exceeds 15 kilograms, and impose a sentence of 151 months.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By:
_____
JOHN V. GEISE
RACHEL C. LIEBER
Assistant U.S. Attorneys
United States Attorney's Office
555 Fourth Street, N.W. Rm. 8445
Washington, D.C.  20530
Tel. (202) 514-7121
John.Geise@usdoj.gov